# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOE G. MATA,

        Plaintiff,

v.                                                                   No. CIV 01-519 MV/LFG

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[1]

Plaintiff Joe G. Mata ("Mata") invokes this Court's jurisdiction under 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner determined that Mata was not eligible for disability insurance benefits ("DIB") or supplemental security income ("SSI"). Mata moves this Court for an order reversing the Commissioner's final decision and remanding for a rehearing. [Doc. 8.]

Mata was born on September 29, 1947 and was 52 years old when the administrative hearing was held. He has a tenth grade education and worked as a cement finisher from 1970 until about 1999. He was diagnosed with colon cancer in early 1999, and had the tumor removed in August 1999. The surgery involved an abdominal perineal resection and a diverting colostomy, with the

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

result that Mata must use a colostomy bag. On May 14, 1999, Mata filed an application for SSI and DIB, alleging an onset date of April 5, 1999, when he alleges he was unable to work due to his disabling condition. [Tr. at 56]

Mata's application for benefits was denied at the initial and reconsideration stages, and he sought timely review from an Administrative Law Judge ("ALJ"). An administrative hearing was held in Carlsbad, New Mexico on June 14, 2000. In a decision, dated June 27, 2000, the ALJ found that Mata could perform the demands of a full range of light and medium work in accordance with the Medical Vocational Guidelines ("grids"). [Tr. at 18.] Mata challenged this determination to the Appeals Council which denied his request for review on March 16, 2001. This appeal followed.

## Standards for Determining Disability

In determining disability, the Commissioner applies a five-step sequential evaluation process.[2] The burden rests upon the claimant to prove disability throughout the first four steps of this process, and if the claimant is successful in sustaining his burden at each step, the burden then shifts to the Commissioner at step five. If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends.[3]

Briefly, the steps are: at step one, claimant must prove he is not currently engaged in substantial gainful activity;[4] at step two, the claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . .,"[5] at step three,

---

[2] 20 C.F.R. § 404.1520(a)-(f) (1999); <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988).

[3] 20 C.F.R. § 404.1520(a)-(f) (1999); <u>Sorenson v. Bowen</u>, 888 F.2d 706, 710 (10th Cir. 1989).

[4] 20 C.F.R. § 404.1520(b) (1999).

[5] 20 C.F.R. § 404.1520(c) (1999).

2

the Commissioner must conclude the claimant is disabled if he proves that these impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1 (1999);[6] and, at step four, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work.[7] If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, at step five, that considering claimant's RFC,[8] age, education and past work experience, he is capable of performing other work.[9] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove he cannot, in fact, perform that work.[10]

## Standard of Review and Allegations of Error

On appeal, the Court considers whether the Commissioner's final decision is supported by substantial evidence, and whether the Commissioner used the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a mere scintilla, but it need not be a preponderance. Trimiar v. Sullivan, 966 F.2d 1326, 1329 (10th Cir. 1992); Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). The Court's review of the Commissioner's determination is limited. Hamilton v. Secretary of Health & Human Servs., 961 F.2d

---

[6] 20 C.F.R. § 404.1520(d) (1999). If a claimant's impairment meets certain criteria, that means his impairment is "severe enough to prevent him from doing any gainful activity." 20 C.F.R. § 416.925 (1999).

[7] 20 C.F.R. § 404.1520(e) (1999).

[8] One's RFC is "what you can still do despite your limitations." 20 C.F.R. § 404.1545(a). The Commissioner has established RFC categories based on the physical demands of various types of jobs in the national economy. Those categories are: sedentary, light, medium, heavy and very heavy. 20 C.F.R. § 405.1567 (1999).

[9] 20 C.F.R. § 404.1520(f) (1999).

[10] Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).

1495, 1497 (10th Cir. 1992). The Court's function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision and whether the correct legal standards were applied. Id. at 1497-98. In Clifton v. Chater, the Tenth Circuit described, for purposes of judicial review, what the record should show:

> The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence he rejects.

Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) (internal citations omitted). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. The Court cannot re-weigh the evidence or substitute its judgment for that of the Commissioner. Hargis v. Sullivan, 945 F.2d 1482, 1486 (10th Cir. 1991).

After carefully evaluating Mata's medical records and his testimony (Tr. at 15-18), the ALJ rejected Mata's claim for benefits at step five by applying the grids. In reaching this decision, Judge Gary L. Vanderhoof made the following findings: (1) Mata appears not to have engaged in substantial gainful activity since the onset of his disability; (2) he has a severe impairment or combination of impairments, consisting of rectal carcinoma, status post resection, severe reaction to cancer treatment medications (5-FU and leucovorin) with hair fall and profound leukopenia (reduction of leukocytes in the blood) as of October 19, 1999; (3) Mata's impairments did not met or equal in severity any of the Listings, specifically Listing 13.18; (4) Mata's testimony of severe pain and functional limitations were not entirely supported by the evidence to the disabling degree alleged; (4) he has the ability to work but is unable to return to his past relevant work as a cement finisher; (5) the grids were applicable since he has only exertional limitations; and (6) the evidence supported

4

a finding that he could perform a full range of light and medium work. Thus, Mata was not under a disability, as defined by the Social Security Act, at any time through the date of the ALJ's decision. (Tr. at 17-18.)

In this appeal, Mata asserts that the case must be reversed and remanded on the following grounds: (1) the ALJ erred in finding Mata's subjective complaints and functional limitations, including pain, were exaggerated; and (2) at step five of the sequential analysis, the ALJ failed to meet his burden in concluding that Mata could perform other work in the national economy. [Doc. 9, pp. 5, 7.] The Commissioner responds that the ALJ's decision was supported by substantial evidence of the record and is consistent with the pertinent regulatory criteria. [Doc. 10.]

After a review of the entire record, this Court agrees that there was substantial evidence to support the ALJ's credibility and step five findings. Thus, the Court recommends that Mata's motion to reverse be denied.

## Summary of Mata's Medical Care/Conditions

In late 1998, Mata began complaining of weight loss, stomach cramps, multiple bowel movements, and diarrhea. [Tr. at 108-112.] These symptoms continued through early 1999. [Tr. at 90, 107.] The barium enema performed in April 1999 showed a lesion in the rectum that was consistent with a carcinoma. [Tr. at 93.] Dr. Hipolito Antiporda wrote, on May 3, 1999, that Mata's "fungating tumor" was most likely malignant, that he needed surgical excision, and post operative radiation and/or chemotherapy. [Tr. at 115.] It was noted that Mata was in need of financial assistance. [Id.] The May 5, 1999 biopsy confirmed a cancerous rectal tumor. [Tr. at 116.] The May 10, 1999 record shows "fixed rectal cancer" as the diagnosis. [Tr. at 97.] Dr. Dean Bair inserted a catheter for chemotherapy administration on that date.

Oncologist Dr. E.C. Hadzic evaluated the tumor to be inoperative or unresectable on May 12, 1999, but hoped that medication would render it operable over time. [Tr. at 126.] On May 13, 1999, Mata began chemotherapy. [126, 124.]

On May 14, 1999, Mata applied for DIB and SSI, alleging an onset date of May 5, 1999. [Tr. at 56, 225.] His disability report asserts that he cannot walk far and cannot lift because of the colon cancer and related pain. [Tr. at 64.] He described his cement finishing work as requiring bending, walking, lifting more than 10 pounds, and carrying as much as 300-400 pound cement forms with help. He stated that he lifted 25 pounds frequently while working. [Tr. at 65.] On May 14, an SSA interviewer noted that Mata was on chemotherapy and taking radiation treatments, that he did not look physically well and seemed very depressed. [Tr. at 75.] He was observed to have difficulties with sitting and walking. [Id.]

By June 10, 1999, Mata had completed his course of "chemoradiation" that was started May 13. Dr. Hadzic noted that Mata tolerated the treatments exceptionally well. [Tr. at 124.] He was to be x-rayed for reassessment, although the tumor was seen on a pelvic scan as infiltrating toward the posterior wall of the bladder. [Id.]

On July 6, 1999, Mata was "generally well," eating "very abundantly," and had increased his weight. His bowel movement was unobstructed and he did not have any blood in it. Dr. Hadzic still could feel the pelvic mass and was evaluating the possibilities of its operability. [Tr. at 122.] The July 13, 1999 CT of Mata's pelvis showed diminution of the rectal mass but some densities extending towards the posterior aspect of the urinary bladder. [Tr. at 130.] On July 20, Dr. Bair examined Mata and was concerned about whether he could remove the tumor or not. He told Mata that he would require a left sided colostomy and an abdominal perineal resection, if it could be done. [Tr.

6

at 179.] Dr. Bair told Mata he would need a colostomy, even if they were unable to remove the tumor. Dr. Bair indicated that Mata did not have many options, other than surgery. [Id.]

On August 2, 1999, Mata saw Dr. Purpura who noted that Mata's pain had "significantly decreased" after the treatment regimen. [Tr. at 191.] The August 9, 1999 medical record indicates that Mata had rectal pain and bleeding and was taking pain medication. [Tr. at 164-65.] Mata underwent abdominal perineal resection for rectal carcinoma on that day and was doing well postoperatively. The colostomy was functioning. Dr. Bair recommended that he be progressively active and ambulatory. He was not to lift more than 10-15 pounds. [Tr. at 142.] At a follow-up appointment, Dr. Bair stated that Mata would require another 4 courses of chemotherapy. [Tr. at 178.] On August 24, 1999, Mata had "some soreness in his incision, not a whole lot of severe pain." He was walking and getting more exercise. [Tr. at 177.]

On August 26, 1999, Dr. Khorsand saw Mata and commented that Mata tolerated the surgery well, "had not had any fever, chills, cough, shortness of breath, abdominal pain, constipation, diarrhea, headache, or bone pain after surgery." [Tr. at 201.] Dr. Khorsand recommended six more courses of chemotherapy each consisting of treatment for five days a month. [Id.]

Mata's course of chemotherapy started on September 13, 1999. [Tr. at 174.] On the third day, he did not feel well and was tired and aching. [Tr. at 170.] On the fourth day, he said he had chills and dribbling at the end of urination. [Tr. at 169.] He completed the course on September 17. [Tr. at 167.]

On September 21, 1999, Mata told Dr. Purpura that he noticed frequent urination and some burning since the surgery. He had nocturia (excessive urination at night) as well and chills intermittently. [Tr. at 190.]

7

On September 30, Mata's underlying application for SSI and DIB was denied. [Tr. at 41.] The Commissioner found that the follow up records from Mata's surgery did not indicate Mata could not perform work related activities during a period of 12 consecutive months. [Tr. at 41, 230.]

On October 4, 1999, Dr. Khorsand noted that Mata had been treated for a urinary tract infection by Dr. Purpura and was also leukopenic. Mata developed oral mucositis (inflammation of a mucous membrane) after the last chemotherapy and had a hard time recovering from chemo. But over the past five days, Mata did not have any fever, chills, abdominal pain, or headache, etc. He did, however, have dysuria (painful or difficult urination) and burning with urination. [Tr. at 199.] Dr. Khorsand concluded that it did not appear Mata could tolerate the chemo dose and combined chemoradiation after surgery. He planned to continue a course of chemotherapy after Mata recovered (and based on Mata's hearing testimony, it seems that he did receive additional courses of chemotherapy). [Tr. at 199.]

On October 5, Mata asked for reconsideration of the earlier SSI denial. He stated that he had complications with chemotherapy and needed to stop it until he "built up his blood." [Tr. at 45, 77.] He could not bend or lift anything heavy and stated he was in mental anguish over the colostomy. [Id.]

On October 14, 1999, Mata still had trouble with urination off and on and complained of erythema (redness of skin) and pain around his line exit site. It was noted that he had "significant leukopenia after chemotherapy," and that the doctor planned to reduce his dose by 20% for his next course. He was prescribed antibiotics for the line infection. [Tr. at 198.]

At an October 18 follow up visit, Dr. Khorsand noted that Mata's line was removed that morning. Mata had not had any fever, chills, cough, abdominal pain, headache, or bone pain. [Tr.

at 197.] It does not appear that Mata visited any treating physician between October 1999 and December 2000.

Dr. Nancy Nickerson, an agency reviewing physician, performed a medical assessment on November 17, 1999, stating that, based on her review of his medical file, she did not expect Mata to have any exertional limitations as of May 2000. [Tr. at 217-18.]

On June 13, 2000, Dr. Hadzic wrote a letter "to whom it may concern," noting that he had not seen Mata since October 1999. "Since then I have not seen him but my recommendation is the same: once he has finished chemotherapy . . . he should try to resume his work in construction. Obviously, he cannot lift heavy materials and his work must be modified to the point that he will not be as physically active as he was before his disease and treatment." [Tr. at 224.] Dr. Hadzic also stated that he should be able to adjust to modified working conditions, provided he has no recurrences or side effects from treatment. However, that would depend on how considerate his employer was. Dr. Hadzic opined that it would be worth it to the employer to modify his work to his physical capabilities and retain him for his experience. Finally, Dr. Hadzic (and Dr. Khorsand) "strongly encourage the patient to try to resume his life and work as much as possible. That by itself will improve his outlook on life." [Tr. at 224.]

The ALJ hearing was held on June 14, 2000 and lasted about twenty minutes. [Tr. at 23-38.] Mata complained of pain in his stomach and stated that he could not work. [Tr. at 25.] Mata indicated that since his surgery, he had been treated with radiation and chemotherapy for three or four months. [Tr. at 26.] He testified that he could not lift anything heavy, could not stand and was sleepy. He also stated he was not normal because of the bag he had to carry and the pain he felt when he bent down. [Tr. at 27.] The colostomy bag sometimes opened up when he bent. He described

9

having sharp pains in his stomach when he bent down often. [Tr. at 28.] He was only taking Tylenol for the pain then because that is all he could afford. [Tr. at 28.] His cancer was in remission. He also complained of having to urinate every 30-40 minutes.

Mata said that he typically got up in the morning around 8:00 and went to bed at 10 p.m. He was able to dress and feed himself. He helped his wife around the house. He could drive an automatic transmission, but did not drive much. He watched TV and was able to walk around the house and outside. Mata's doctor did not specify how much lifting Mata could do; he merely told Mata he should not engage in any heavy lifting. Mata testified that he could lift typical grocery bags, milk, soda, etc. [Tr. at 34.] When he worked, Mata got along with his co-workers. [Tr. at 35.]

On December 12, 2000, six months after the administrative law hearing, Mata saw Dr. Bair who stated that Mata was developing a para-stomal hernia. [Tr. at 238.] Dr. Bair noted that Mata would require life time follow up for his cancer and that he had a significant amount of pain in the lower portion of his incision in the para-stomal area. Dr. Bair believed the pain resulted from scarring and radiation. Dr. Bair concluded that since Mata had always done heavy work requiring lifting, stooping and bending, Mata was not employable "at this point and probably . . . not . . . in the future." "His physical condition will not allow him to do manual labor." [Tr. at 238.] While this record was not before the ALJ, it was presented to the Appeals Council and is part of the administrative record that the Court considers.

## Discussion

### I. CREDIBILITY FINDINGS

Mata primarily argues that the ALJ erred in determining that his complaints of pain were exaggerated and in failing to specify how he reached that determination. [Doc. 9, p. 6.] Mata further

argues that his "complaints and limitations" "clearly precluded him from working, even at less that (sic) heavy construction." [Id., pp. 6-7.]

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (internal citation omitted). Nonetheless, credibility findings must be closely and affirmatively linked to substantial evidence and not merely conclusory. Id. A formalistic factor-by-factor recitation of the evidence is unnecessary. As long as the ALJ provides specific evidence upon which he relies to support his credibility findings, he complies with the dictates of Kepler. Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

With respect to allegations of pain, a claimant's testimony alone cannot establish the existence of disabling pain. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment, that could reasonably be expected to produce the alleged disabling pain.

Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (internal citations omitted). The framework used for proper analysis of a claimant's evidence of pain consists of the following elements:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, claimant's pain is in fact disabling.

Luna v. Bowen, 834 F.2d 161, 163-64 (10th Cir. 1987). To find Mata's pain disabling, there must be medical evidence showing that the pain is "so severe, by itself or in conjunction with other

11

impairments, as to preclude any substantial gainful employment." Brown v. Bowen, 801 F.2d 361, 362-63 (10th Cir. 1986) (internal quotation omitted). Other factors pertinent to the ALJ's credibility determinations are: "a claimant's persistent attempts to find relief for [her] pain and [her] willingness to try any treatment prescribed, regular use of crutches or a cane, regular contact with a doctor . . ., the claimant's daily activities, and the dosage, effectiveness, and side effects of medication." Luna, 834 F.2d at 165-66.

Here, Judge Vanderhoof carefully and thoroughly considered Mata's complaints of pain, in accordance with pertinent case law and social security regulations. [Tr. at 16.] Based on a review of the medical records, along with Mata's testimony, the ALJ concluded that while a "pain producing impairment [was] present, . . . the claimant exaggerates the degree of pain experienced." [Tr. at 16.] Judge Vanderhoof specifically analyzed Mata's complaints of stomach pain that prevented him from bending, the sharp pains in his stomach, his use of a colostomy bag that interfered with bending, the pain and burning he experienced while urinating, and his doctor's recommendation that he not engage in heavy lifting. The ALJ also considered Mata's allegations that if he stood erect, he felt pain all the way down to his buttocks.

The ALJ then reviewed the opinions of the state agency medical consultant finding that Mata had the ability to engage in substantial gainful activity as of May 2000, along with his treating doctors' encouragement that he resume his life and work as much as possible and return to work after completing chemotherapy. [Tr. at 17.] Judge Vanderhoof noted that Mata had completed chemotherapy and was only taking Tylenol for pain. Clearly, the ALJ considered all of the evidence, both objective and subjective, in determining that Mata's pain was not disabling.

The Court is sympathetic to Mata's serious health condition and his frustration over the need to use a colostomy bag, but his health condition appears, fortunately, to be in remission, and hopefully is resolved. Without more objective documentation of pain, there simply is not enough evidence to show that Mata's pain is so severe by itself or in conjunction with other impairments to preclude him from engaging in gainful employment. Moreover, while his anxiety over the need to use a colostomy bag and his problems with it are understandable, these complaints do not demonstrate physical disabling pain.

Consistent with this view is his treating physician's letter, written the day before the ALJ hearing. Dr. Hadzic believed that resuming his life and returning to some sort of modified work would improve Mata's outlook on life. Indeed, between October 1999 and June 2000 (according to the administrative record), Mata had not visited any doctor with respect to complaints of pain or any other symptoms. On his last visit to Dr. Khorsand in October 1999, he had no complaints of abdominal pain or bone pain. Although he complained of pain around the (medication) line site, the line was removed which apparently resolved that pain. His problems with urination in October 1999 occurred "off and on." In addition, while Mata experienced a negative reaction to the chemotherapy medication, he no longer is undergoing chemotherapy.

Dr. Bair's December 2000 medical record indicates that Mata was developing a para-stomal hernia, at least as of December 12, 2000, and also that Mata had "significant pain" in the lower portion of his incision as a result of scarring and radiation. Dr. Bair also concluded that Mata was not employable, but his conclusion can be read to mean that Mata was not employable in the heavy manual type of labor he had performed. In other words, Dr. Bair's letter does not indicate that Mata's pain is disabling to the point that he is unable to engage *in any kind* of gainful (medium or

13

light level) work. Moreover, Dr. Bair does not state that he recommended or prescribed any type of pain medication for Mata.

The Court concludes that sufficient evidence supports the ALJ's finding that Mata's subjective complaints of pain were not fully credible and that his pain was not sufficiently severe to preclude him from engaging in any type of gainful employment. Thus, the Court finds no basis to disturb Judge Vanderhoof's credibility findings.

## II.     ALJ'S STEP FIVE FINDING

Mata asserts, *inter alia*, that the ALJ's step five findings that he could perform work that existed in the national economy were based on a lack of evidence, thereby improperly shifting the burden back to Mata. Thus, Mata contends that the ALJ's determination that he could perform a full range of medium or light work was erroneous and not supported by substantial evidence.

More specifically, Mata argues that Dr. Hadzic was without sufficient information in June 2000 to opine that he should resume physical activities and gainful employment.[11] Mata believes more emphasis should have been placed on Dr. Bair's December 2000 letter, that set forth Dr. Bair's view that Mata was not employable "at that time" and "probably not in the future." Mata also contends that his exertional limitations would not permit him to perform medium work which requires occasional lifting of 50 pounds and frequent lifting of 25 pounds. Mata further claims that his non-

---

[11]Mata's reply brief might also be read to raise the argument that the ALJ failed to adequately develop the record by not providing Dr. Hadzic, in June 2000, with additional information regarding Mata's condition as of that date. [Doc. 11, p. 2.] However, the claimant, has the burden to make sure, in the first instance, that there is sufficient evidence to suggest the need to develop the record further or, for example, to order an additional consultative exam. Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997). Moreover, when the claimant is represented by counsel at the administrative hearing, as Mata was, remand is not warranted when counsel fails to specify additional information that is needed. Id. at 1167-68. Here, there is no testimony or argument at the June 14 hearing that the ALJ should have obtained additional information or that Dr. Hadzic did not have the most current information when he wrote the June 13 letter. In addition, it is not clear who prompted Dr. Hadzic's letter, but presumably it was Mata.

14

exertional limitations (pain, fatigue, weakness and frequent urination) precluded the ALJ's exclusive reliance on the grids.

Mata is correct that, at step five of the sequential analysis, the Commissioner cannot rely on a paucity of medical evidence in the record to support his determination. To do so, effectively shifts the burden to the claimant, which is improper. Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996). Rather, at step five, there must be sufficient evidence in the record for the Commissioner to prove that the claimant can perform work. Id. at 976. Here, the ALJ expressly shifted the burden to the Commissioner at step five, [tr. at 17, ¶ 5], and correctly considered the evidence in the record which indicated that Mata could engage in work.

Although Judge Vanderhoof did not specifically discuss all of the evidence, he is not required to do so. *See* Clifton, 79 F.3d at 1009-10 (ALJ need not specifically discuss each piece of evidence, although he or she must consider all of the evidence). The ALJ indicated that he properly considered all of the documentary evidence in reaching his decision. [Tr. at 15.] The evidence presented to the ALJ, while reflecting a serious medical condition that required significant treatment, supports the determination that Mata was able to return to some type of work. For example, after the surgery on August 9, 1999, Mata did well and Dr. Bair recommended that he be progressively ambulatory and active. Even then, he was permitted to lift 10-15 pounds. [Tr. at 142.] He was walking and exercising as of that date. [Tr. at 177.] Dr. Khorsand also commented in late August 1999 that Mata did not have any significant post-surgery problems or pain and had tolerated the surgery well. [Tr. at 201.] Similarly, in September 1999, Mata reported that he had been feeling fairly good since the surgery and again had no complaints of pain then. [Tr. at 200.] Moreover, between November 1999

and until well after the administrative hearing in June 2000, there are no medical records showing that Mata sought or obtained medical treatment for any type of complaint.

While Mata had some problems tolerating the dosage of chemotherapy he received after his surgery, the dosage apparently was modified and his treatment completed sometime before the administrative hearing. Dr. Hadzic's June 13, 2000 letter indicates that Dr. Hadzic and Dr. Khorsand, both treating physicians, consistently believed that Mata should resume his life and work. Dr. Hadzic's letter intimates that nothing was preventing Mata from working, other than perhaps his outlook on life, which Dr. Hadzic believed could be improved by returning to work. [Tr. at 224.]

In late September 1999, Dr. Donald B. Stewart, reviewed the record and opined that Mata had no evidence of cancer as of that date and that a finding of a non-severe impairment was appropriate. [Tr. at 219.] In October 1999, another reviewing physician, Dr. Nancy Nickerson, reviewed these records and reached the same conclusion as the treating physicians – namely, that once Mata completed his chemotherapy (and assuming he did not have further complications or recurrences), there was nothing to preclude him from working. [Tr. at 217-18.] This evidence, along with no contradicting objective medical evidence, provides sufficient support for the ALJ's determination that Mata could engage in gainful employment, even if it was not the same heavy labor that he performed previously.

Although Dr. Bair's letter, dated December 12, 2000, was not before the ALJ when he issued his decision, it is part of the administrative record that was submitted to the Appeals Council. The Appeals Council will consider "new evidence," if it is material (reasonable possibility that it would have changed the outcome) and if it relates to the time period for which the benefits were denied. 20 C.F.R. § 404.970(b); Boone v. Apfel, 1999 WL 668253 at *2 (10th Cir. Aug. 26, 1999).

In this case, the Appeals Council's decision reflects that both Mata's counsel's letter, dated December 19, 2000 and Dr. Bair's letter were considered. [Tr. at 5.] However, the Appeals Council expressly concluded that "neither [counsel's] contentions nor the additional evidence provide a basis for changing the ALJ's decision." [Id.]

Relying on Stephens v. Callahan, 971 F. Supp. 1388 (N.D. Okla. 1997), Mata argues that the additional evidence "clearly merited at least a remand by the Council" because the Appeals Council failed to even discuss the new evidence in its decision. [Tr. at 9, p. 8.] This case is easily distinguishable from Stephens where the additional reports submitted to the Appeal Council constituted the "majority of the medical record both in terms of time span and page volume. . . ." Id. at 1391. In addition, in Stephens, the new evidence covered the "precise time-frame at issue." Id.

Here, the additional evidence consists of one-page letter from Dr. Bair and a 1½ page letter from Mata's counsel. The new evidence constitutes very little of the 200+ pages of the administrative record. In these circumstances, nothing requires that the Appeals Council discuss these two documents in detail. Moreover, Dr. Bair's letter indicates that he does not believe Mata is employable "at this point". Thus, the new evidence does not refer to the time period at issue. In other words, Dr. Bair does not state anywhere in his letter that Mata has not been employable since the date of his surgery, or that the condition (para stomal hernia) of which he was complaining on December 12, 2000, had occurred previously. Indeed, Dr. Bair states in his letter that Mata "is developing" the hernia condition, implying that it is a current medical issue.

Therefore, consideration of the new evidence does not require a change in the outcome: Judge Vanderhoof's determination remains supported by substantial evidence. In addition, the fact

that Dr. Bair's letter explicitly refers to Mata's prior employment involving heavy manual labor does not undermine the ALJ's conclusion that Mata could perform light or medium level work.

Mata also argues that there was no evidence in the record to contradict his testimony that he could not lift 50 pounds and could not frequently lift or carry item weighing as much as 25 pounds. First, there is no cite to the record as to where Mata actually testified he could not lift these weights. At the hearing, he did not provide any such testimony, other than to say his doctors told him he could not engage in "heavy lifting." His disability form merely states that he cannot lift anything heavy because of his "[col]ostomy system." [Tr. at 77.] He also stated that he could not bend as his colostomy bag might burst or tear. [Tr. at 79.] He never specifically states he is unable physically to lift these weights, nor is there any objective medical evidence documenting his inability to lift certain weights.

In addition, the ALJ found that he was capable of engaging in light or medium level work. While medium work involves lifting "no more than 50 pounds at a time" with frequent lifting or carrying objects weighting up to 25 pounds, light work involves lifting no more than 20 pounds at a time and frequent lifting of objects up to 10 pounds. Mata provides no subjective or objective evidence that he is unable to lift or carry such weights. In addition, none of his physicians specifically limited his ability to lift to that degree. Indeed, immediately after his surgery, he was allowed to lift as much as 10-15 pounds, and he continued to recover well from his surgery according to his physicians. Furthermore, the fact that Mata has some pain in lifting or bending does not compel a finding of disability. *See* Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988) (finding of disability requires more than the inability to work without pain).

Mata's last argument is that his nonexertional limitations precluded the ALJ from exclusive reliance on the grids. He specifically contends that fatigue, pain, frequent urination and weakness are all nonexertional limitations that supported a finding of disability. First, the mere presence of nonexertional limitations does not prevent the ALJ from relying on the grids. Use of the grids is foreclosed only "[t]o the extent that nonexertional impairments further limit the range of jobs available to the claimant." Channel v. Heckler, 747 F.2d 577, 583 n. 6. (10th Cir. 1984) (internal citation omitted). Second, Mata provides no significant objective medical evidence to support a finding that his alleged nonexertional impairments interfere with his ability to perform light and medium level work. For example, while his fatigue is documented in one medical record but it could be interpreted as a symptom of the infection he had then. [Tr. at 197.] His problems with urination were never documented as preventing him from working a full range of light or medium work, although one doctor opined that he would need to work for a considerate company. [Tr. at 224.] Further, there is no objective medical evidence showing that Mata's alleged weakness prevented him from working.

For all of these reasons, this Court concludes that the ALJ's reliance on the grids, under these circumstances, was proper, and that sufficient evidence supported the ALJ's step five finding that Mata could work a full range of light or medium level work.

## Recommended Disposition

That Mata's Motion to Reverse and Remand [Doc. 8] be denied for the reasons stated herein and that this matter be dismissed with prejudice.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge